Case 2:21-cv-03627-GRB-JMW   Document 16   Filed 08/12/22   Page 1 of 5 PageID #: 898

FILED
CLERK
8/12/2022 1:59 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROY WAGNER

                      Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
-----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

21-CV-3627(GRB)

**GARY R. BROWN, United States District Judge:**

This is what a flashcube looks like:

 

It consisted of "a rotating cube with a miniature flashbulb incarcerated within each of its four mirrored compartments [that] made amateur photography of the domestic interior possible from the mid-1960s onwards."[1] If you don't recognize it, you're not alone: Production of these curious contraptions ceased in the 1970s.[2] Yet, according to the Social Security Administration, plaintiff,

---

[1] Harriet Harriss, "The Obsolete Object that Gave Every Boomer a Case of Redeye," Dec. 21, 2021, available at https://slate.com/technology/2021/12/the-kodak-flashcube-history-how-the-object-changed-domestic-photography.html.
[2] *Id.*

1

a severely injured former firefighter, is unentitled to disability benefits because he can join the legions of Americans gainfully employed selling flashcubes, film and camera batteries.

In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), plaintiff challenges a final determination by the Commissioner of the Social Security Administration that he was ineligible to receive Social Security disability insurance benefits. *See* DE 1. Presently before the Court are the parties' cross motions, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings.

The ALJ found that plaintiff (1) meets the insured status of the Social Security Act through the end of 2022; (2) has not engaged in substantial gainful employment since April 27, 2017; (3) sustained severe injuries to his back (leading to repeat spinal fusion operations) and knees, resulting from, *inter alia,* a fifteen-feet fall while working as a firefighter, and (4) is quite obviously unable to perform his past relevant work as a firefighter. Tr. 13-19. Then, in a remarkable turn, the ALJ found that plaintiff does not retain the residual functional capacity to perform the full range of light work, but rather, relies entirely on testimony of David Pritchard,[3] a vocational expert, that the plaintiff *might* be able to perform three jobs: a photo finishing counter clerk, a "children's attendant" and an attendant in a tanning salon, to determine that the plaintiff is not disabled. Tr. 18-19.

I emphasize *might* for two reasons: First, the ALJ posited a hypothetical that the plaintiff would be "off-task" because of pain 15% of the time and absent two days per month (neither of which seem implausible under these circumstances), which the VE testified would "eliminate all competitive work in the national economy." Tr. 47. Furthermore, the ALJ glosses over the issue

---

[3] Notably, this is not the first time a court has remanded a determination based upon Mr. Pritchard's analysis. *Bragg v. Hartford Life & Acc. Ins. Co.*, 2012 WL 32605, at *6 (W.D. Ky. Jan. 6, 2012) (finding that Prichard's conclusion that a disability claimant could hold certain positions did "not reflect a reasoned review of the claim.").

2

of whether plaintiff could reach overhead, an issue he quizzically stated is "not addressed by the DOT." *Id.*

This Court has repeatedly condemned the "unblinking acceptance of conclusory opinions by vocational expert testimony by the ALJ," particularly that "predicated on plainly obsolete positions." *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 223-25 (E.D.N.Y. 2021); *Kiiroja v. Comm'r of Soc. Sec.*, 525 F. Supp. 3d 412, 413 (E.D.N.Y. 2021) (ordering remand where the "ALJ relies on the existence of 'document preparer' jobs in the national economy [because] the vocational expert dubiously opined that 35,000 such positions await those who care to plunge into production of microfilmed records"); *Feuer v. Saul*, 2019 WL 9042872, at *1 (E.D.N.Y. 2019), *report and recommendation adopted,* 2020 WL 1316528 (E.D.N.Y. 2020) (noting that it was "troubling" that vocational expert testified that "nearly 2.8 million individuals nationally are engaged in the unskilled sedentary position of document preparer for microfilming.").

The decision here rests entirely on such testimony. The notion that there are opportunities waiting for this plaintiff to work as a photo finishing counter clerk belies all common sense. The ubiquity of smartphones with built-in digital cameras has consigned consumer film processing to the most niche of markets: by one estimate in 2015, there were only 190 photo development shops left in the United States.[4] Thus, the photo finishing counter clerk has gone the way of the VCR movie rental clerk or a carbon paper salesperson, and testimony about such archaic posts have no place in determining important rights of our citizenry. This is not the first court decision to hold that photo shop counter clerk is both an obsolete position and an inappropriate basis upon which to deny disability benefits. *Lisa Ann B. v. Berryhill*, 2019 WL 1505914, at *3-*4 (N.D. Ill. 2019)

---

[4] Patrick Clark, *Twilight of One-Hour Photo, America's Fastest-Fading Business*, Bloomberg (Apr. 30, 2015, 12:23 PM), https://www.bloomberg.com/news/articles/2015-04-30/twilight-of-the-one-hour-photo-shop-america-s-fastest-fading-business#xj4y7vzkg.

3

(vacating ALJ's decision because "the VE gave a DOT job number for an obsolete job in the photo finishing industry" that the court described as "vital testimony . . . conjured out of whole cloth.").

Another job suggested by the VE and wholly embraced by the ALJ is equally problematic: a "children's attendant," described as an individual who "[m]onitors behavior of unaccompanied children in children's section of theater to maintain order." DOT 349.677-018. One would be hard pressed to find such a designated "unaccompanied children's section" in a contemporary movie theater, a concept that vanished along with 3-D glasses and CinemaScope.[5]

In *Zacharopoulos*, this Court examined a related problem: wildly inconsistent sworn testimony offered by experts in these cases as to the number of jobs available for any given vocational title. *Zacharopoulos*, 516 F. Supp. 3d at 221. And this Court is confronted, yet again, by the same issue.

Mr. Pritchard testified that there were 30,000 photo finishing counter clerks in the national economy, yet other reported cases note that vocational experts swore to widely varying numbers, from as few as 24,000 to nearly one-quarter million. *Dutton v. Comm'r, Soc. Sec. Admin.*, 2022 WL 258482, at *2 (W.D. Ark. 2022), *report and recommendation adopted*, 2022 WL 257827 (W.D. Ark. 2022) (104,310 positions); *Smith v. Saul,* 2020 WL 7364506, at *3 (E.D. Ky. 2020) (24,000 jobs); *Lafler v. Colvin*, 2016 WL 1247209, at *6 (W.D.N.Y. 2016) (80,000 jobs nationally and 200 in the Finger Lakes region); *Musgrave v. Astrue*, 2010 WL 3749428, at *3 (W.D. Okla. 2010), *report and recommendation adopted*, 2010 WL 3749432 (W.D. Okla. 2010) (242,000 nationally, and 3,400 in Oklahoma). Similarly, Mr. Pritchard testified that there are some 24,000 movie theater children's attendants; other experts hired by the Commissioner, all at taxpayer expense, have given estimates, under oath, ranging from under 2,000 to more than 100,000. *Polly*

---

[5] *See* Ron Alexander, *Remembering the Movie Matron*, N.Y. TIMEs, Mar. 2, 1988 (discussing "movie theater matrons who reigned in the dark from the early 1930's to the early 50's").

4

*O. v. Kijakazi,* 2021 WL 6297542, at *14 (D. Minn. 2021), *report and recommendation adopted*, 2022 WL 62083 (D. Minn. 2022) (over 100,000 jobs nationally); *Hardy v. Saul*, 2020 WL 4460557, at *8 (N.D.W. Va. 2020), *report and recommendation adopted sub nom. Samuels v. Saul*, 2020 WL 4451047 (N.D.W. Va. 2020) (23,000 jobs nationally); *Christina E. S. v. Saul*, 2020 WL 868604, at *8 (C.D. Cal. 2020) (1,800 jobs nationally); *Jackson v. Astrue*, 2011 WL 6780744, at *4 (S.D. Ala. 2011) (1,005 in Alabama and 96,123 nationally).

And the truth is, despite the figures contained in reams of sworn expert testimony and, worse yet, denials of disability benefits based upon this testimony, the number of jobs in the U.S. economy for photo development counter clerks and movie theater matrons is, in all probability, effectively zero.

So, as Justice Gorsuch has observed, the answer is simple:

> Witness testimony that's clearly wrong as a matter of fact cannot be substantial evidence. Falsified evidence isn't substantial evidence. Speculation isn't substantial evidence. And, maybe most pointedly for our purposes, courts have held that a party or expert who supplies only conclusory assertions fails this standard too.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1159 (2019) (Gorsuch, J., dissenting) (citations omitted).

The matter is remanded for further proceedings consistent with this opinion. The Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
August 11, 2022

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge